IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-01616-WYD-KLM

BONNIE CHADWICK,

      Plaintiff,

v.

DENVER PUBLIC SCHOOL DISTRICT,

      Defendant.

_____

**ORDER**

_____

I.     INTRODUCTION

      THIS MATTER is before the court on Defendant's Motion for Summary

Judgment, filed July 20, 2010 [ECF No. 20].  Defendant, Denver Public School District,

moves for summary judgment on all of Plaintiff's claims pursuant to Fed. R. Civ. P. 56.

Plaintiff, Bonnie Chadwick, filed a Response on August 23, 2010 [ECF No. 27].

Defendant filed a Reply on September 17, 2010 [ECF No. 35].  For the reasons set forth

below, I find that Defendant's Motion for Summary Judgment should be granted.

II.    BACKGROUND

      Plaintiff initiated this employment discrimination action against the Defendant on

July 8, 2009.  She asserts claims for race and gender discrimination under Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and 42 U.S.C. § 1981, as well as an

age discrimination claim under the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 621 *et seq*, and 42 U.S.C. § 1981.  Voluminous facts have been asserted by

both parties in connection with the summary judgment motion and briefing.  I will summarize those facts which I deem pertinent to my ruling.  I have, however, construed all of the facts in the light most favorable to Plaintiff as I must for purposes of this summary judgment motion.  *See Carolina Cas. Ins. Co. v. Yeates*, 533 F.3d 1202, 1204 (10th Cir. 2008).

In 1984, Defendant hired Plaintiff as a part-time custodial helper; an at-will employment position.  (Def.'s  Mot. Summ. J. ¶ 1.)  Defendant repeatedly promoted Plaintiff through the course of her employment and in September 2000, she was promoted to the position of Area Supervisor.  Defendant had a total of five Area Supervisor positions when Plaintiff was promoted in 2000; each Area Supervisor was assigned to a different area of the school district.  At the time of her termination she was the Southeast Area Supervisor.  (*Id.* ¶¶ 2, 3, 5.)  As the Southeast Area Supervisor, Plaintiff supervised custodial staff within the southeast area of Defendant's schools.  (*Id.* ¶¶ 3, 5.)  Of the five individuals employed as Area Supervisors, three, including Plaintiff, were Hispanic, one was Caucasian and one was African-American.  (*Id.* ¶ 6.)  At no time did Plaintiff's at-will employee status change.  (*Id.* ¶ 7.)

In September 2006, Andy Ramirez, a facility manager under the supervision of Plaintiff, filed a sexual harassment complaint against Plaintiff, alleging that she made inappropriate sexual advances towards him.  (Def.'s Mot. Summ. J. ¶¶ 22, 23.)  As part of its normal procedures, Defendant placed Plaintiff on administrative leave with pay so that it could properly investigate the complaint.  (Chadwick Dep. 60-61: 8-1, Apr. 15, 2010.)  Per its standard practice, Defendant did not permit Plaintiff to discuss the investigation with any employees while on administrative leave.  (Chadwick Dep. 129-

130: 6-12, Apr. 15, 2010.)  Prior to being placed on administrative leave, Plaintiff's

supervisor was Trena Deane (formerly Trena Jones), Interim Director of Operations and

Maintenance.  A few days after Plaintiff was placed on leave, Ms. Jones took an

extended leave of absence and Mr. Rich Cosgrove, Executive Director of Maintenance,

assumed supervision of Plaintiff.

Scott Barnes, the Human Resources Supervisor, was assigned to investigate the

sexual harassment complaint.  (Def.'s Mot. Summ. J. Ex. L Investigation Report at 1;

Barnes Aff. ¶ 6.)  Mr. Barnes interviewed nineteen individuals that worked with Plaintiff,

including Plaintiff herself, as part of his investigation.  (Ex. L Investigation Report at 1-2.)

According to Defendant, Mr. Barnes typed up the statements of the interviewees and

provided each of them with a written copy, which they were asked to review, correct or

change if necessary, and then sign and return to Mr. Barnes.  (Def.'s Mot. Summ. J. Ex.

L Investigation Report; Barnes Aff. ¶ 8)[1].

At the conclusion of his investigation, Mr. Barnes determined that because there

were no eyewitnesses to any of the sexual advances claimed by Mr. Ramirez, whether

the allegations in the complaint were true came down to a credibility determination.

_____

[1]While Plaintiff contends that Mr. Barnes failed to include individuals with
exculpatory information in the final report, she does not identify these individuals or
discuss the information they possessed, and how that information would have been
beneficial to her.  (Pl.'s Resp. to Mot. Summ. J. ¶ 33.)  Plaintiff also contends that the
statements of the interviewees were inaccurate, and made under duress.  While Plaintiff
disputes some of the factual information in the statements, she has not come forward
with any evidence to support her contention that the statements were made under
duress.  Plaintiff states that she has persons who will testify to these facts "in open
court," but she has not provided any affidavit or other sworn statement from these
individuals in support of her opposition to the motion for summary judgment.  As
discussed more fully below, Plaintiff's assertion that individuals will testify to certain
facts at trial, without more, is insufficient to meet her burden under Fed. R. Civ. P. 56(e).

(Def.'s Mot. Summ. J. Ex. L Investigation Report.)  However, in the course of his investigation, Mr. Barnes discovered numerous unrelated instances of unprofessional behavior and misconduct on the part of Plaintiff.  (Barnes Aff. ¶¶ 10, 11.)  Mr. Barnes investigated the following allegations of misconduct: (1) that Plaintiff asked a subordinate, Mr. James Williams, to forge a document used to terminate another employee; (2) that Plaintiff terminated a full-time employee in violation of Defendant's policies; (3) that Plaintiff dated one of her subordinates; (4) that Plaintiff called and talked with one of her subordinates about the Ramirez investigation while she was on administrative leave, in violation of Defendant's policy; (5) that Plaintiff intimidated and retaliated against subordinates; and (6) that Plaintiff made sexual innuendos while at work.  (Barnes Aff. ¶¶ 10, 11; Def.'s Mot. Summ. J. Ex. O Williams Statement.)    In her response to the motion for summary judgment, Plaintiff denies that she asked Mr. Williams to forge a document.  However, in her deposition she admitted instructing Mr. Williams to sign the name "Josephine Morgan" to a document used to terminate another employee.  (Chadwick Depo. p. 89:1:8.)  In response to the remaining allegations raised in Mr. Barnes investigation, Plaintiff contends that: (1) the employee she allegedly terminated was terminated by her supervisor while she was on administrative leave, and notes that Defendant upheld the termination in any case; (2) she did not date the subordinate while he was under her direct supervision; and (3) she did call a subordinate while on administrative but did not discuss the investigation.  (Pl.'s Resp. to Mot. Summ. J. ¶¶ 41, 45, 44.)  Plaintiff denies that she intimidated her subordinates, and she denies that she made sexual innuendos because they were not included in her personnel file nor corroborated.  (Pl.'s Resp. to Mot. Summ. J. ¶¶ 46, 47.)  However, in

a signed statement she provided during the investigation, Plaintiff admitted to having a relationship with a subordinate, and to discussing the investigation with a subordinate. (Def.'s Mot. Summ. J. Ex. N).  In addition, during her deposition, Plaintiff also admitted to making sexual innuendos at work.  (Chadwick Depo. p. 158:16-19.)

At the end of his investigation, Mr. Barnes stated that he did not find Plaintiff to be very credible, and concluded that she had asked Mr. Williams to sign a statement in another employee's name, violated the terms of her administrative leave, and had demonstrated a pattern of unprofessional conduct over several years.  (Def.'s Mot. Summ. J. Ex. L Investigation Report.)  Based on the information contained in Mr. Barnes' Investigation Report, Mr. Cosgrove informed Plaintiff's that he was recommending that her employment be terminated, and that she had the right to appeal his recommendation at a pre-termination hearing.  (Def.'s Mot. Summ. J. ¶¶ 29, 60; Ex. X Termination Hr'g.)  Plaintiff requested a pre-termination hearing, which was held on October 16, 2006 before Mr. Lee Renfrow, the Director of Human Resources.  (Def.'s Mot. Summ. J. Ex. X Termination Hr'g.; Renfrow Aff. ¶¶ 2-4.)  At the hearing, both Mr. Cosgrove and Plaintiff presented their version of the events outlined in Mr. Barnes' investigation.  (Renfrow Aff. ¶ 7.)  On November 2, 2006, Mr. Renfrow sent Plaintiff a letter terminating her employment.  (Def.'s Mot. Summ. J. Ex. Z Termination Letter.)  Plaintiff is an Hispanic woman, and she was fifty years old at the time of her termination. Defendant hired Elbert Maxey to fill Plaintiff's position.  (Deane Aff. ¶ 12; Maxey Aff. ¶ 3.)  Mr. Maxey is an African-American male, who was fifty-five years old at the time he was hired.  (Deane Aff. ¶ 12; Maxey Aff. ¶ 2.)  Plaintiff contends that Defendant actually replaced her with a younger man, Richard Archuleta, who was half-Hispanic and half-

Caucasian.  (Pl.'s Resp. Mot. Summ. J. ¶¶ 72, 46.)  In response, the Defendant

submitted the affidavit of Ms. Deane, who testified that two Area Supervisors were hired

following Plaintiff's termination - Mr. Archuleta, a thirty-five year old Hispanic male who

was hired to fill a position as NW Area Supervisor, and Mr. Maxey who was hired to fill

Plaintiff's position as NE Area Supervisor.  (Deane Aff. BB ¶ 4.)  Plaintiff has not

submitted any evidence that would contradict the information in Ms. Deane's affidavit.

Plaintiff alleges race, gender, and age discrimination based on Defendant's

termination of her employment.  Other than the events leading to her termination,

Plaintiff has not identified any other incidents of discrimination, nor has she identified

any specific person who has discriminated against her.  Plaintiff testified in her

deposition that the basis for her belief that she was terminated because of her race was

that "there was no other Hispanic supervisor that had ever been terminated."

(Chadwick Depo. p. 31:16-17.)  Plaintiff further testified that her basis for believing that

her termination was based on her gender was "I was the first female area supervisor

they ever had."  (*Id.* at p. 54:23-24.)

III.    ANALYSIS

A.    Summary Judgment Standard

Summary judgment may be granted where "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and the ... moving party is entitled to

judgment as a matter of law."   Fed. R. Civ. P. 56(c).

The burden of showing that no genuine issue of material fact exists is borne by

the moving party.  *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190

(10th Cir. 2000).  Once the moving party meets this burden, the burden shifts to the

nonmoving party to demonstrate a genuine issue for trial on a material matter.

*Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

The nonmoving party may not rest solely on the allegations in the pleadings, but must

instead bring forward "specific facts showing that there is a genuine issue for trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Fed. R. Civ. P. 56(e) requires that a

nonmoving party's evidence be "identified by reference to an affidavit, a deposition

transcript, or a specific exhibit incorporated therein."  *Thomas v. Wichita Coca-Cola*

*Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992).

 In reviewing a summary judgment motion, the court must view the evidence in

the light most favorable to the nonmoving party.  *Anaya v. Crossroads Managed Care*

*Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999).  All doubts must be resolved in favor

of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d

891, 892 (10th Cir. 1991).

 B. <u>Plaintiff's Response to Defendant's Statement of Undisputed Material
Facts</u>

 As an initial matter, I note that Plaintiff's response to Defendant's Statement of

Material Facts includes no citation or reference to materials in the record, except for an

occasional reference to the materials provided by Defendant in support of its motion.

While Plaintiff's counsel argues in her response that Plaintiff denies many of

Defendant's statements, Plaintiff does not support this argument with citation to any

affidavit or deposition transcript, including her own deposition, nor does she reference

any evidence in the record.  In her response, Plaintiff frequently states that she "has

witnesses" who will testify on her behalf at trial, without identifying these witnesses, or explaining the substance of their testimony.  In addition, Plaintiff's response includes a Statement of Additional Disputed Facts in which she vaguely asserts that she was "targeted for termination," and that Defendant used the investigation into the sexual harassment complaint as a "cover up" for selectively discriminating against her.  Again, Plaintiff's statements in response are conclusory in nature and are not supported by any reference to materials in the record.  The only materials Plaintiff has submitted in connection with her response are a copy of Personnel Board Rules, a letter from her current employer, and a handwritten (and mostly illegible) and unsworn letter signed by an individual named Patricia Montoya.

When the party moving for summary judgment claims that there is not a genuine issue for trial because a material fact is undisputed, the nonmoving party must do more than recite arguments in response.  Rather, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein.  *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024-25 (10th Cir. 1992) (citing *Celotex*, 477 U.S. at 324); Fed. R. Civ. P. 56(e).  In the absence of such specific reference the court is not required to search the record in an effort to determine whether evidence exists which might require submission of the case to a jury.  *Id.*

Rather than meet her burden of production under Rule 56(e), Plaintiff states in her response that she lacked an opportunity for cross examination of Defendant's affiants, and requests that I allow this matter to proceed so that she can cross examine these witnesses at trial.  Plaintiff also cites to Fed. R. Civ. P. 56(f).  Fed. R. Civ. P. 56(f)

gives the court discretionary power to deny summary judgment or order a continuance when the party in opposition to the motion cannot provide supporting affidavits, or specific facts essential to justify its position.  *See Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 732 (10th Cir. 2006).  However, the party in opposition must expressly invoke Rule 56(f) and must satisfy certain requirements.  *Id.*  In particular, a party must submit an affidavit "averring that it possess insufficient facts to oppose summary judgment" and "identifying the probable facts not available, what steps have been taken to obtain these facts and must explain how additional time will enable him to rebut movant's allegations of no genuine issue of fact."  *Id.* (quoting *Comm. for the First Amendment v. Campbell,* 962 F.2d 1517, 1522 (10th Cir.1992)).  "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition."  *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992).  Under Rule 56(f), "summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  *Hackworth*, 468 F.3d at 732 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5 (1986)).

Here, although Plaintiff correctly cites the language of the rule, she has failed to expressly invoke Rule 56(f) and falls short of satisfying the requirements of the rule. Plaintiff's counsel has failed to attach any affidavit identifying the unavailable facts, the steps Plaintiff will take to obtain these facts, or how additional time might help Plaintiff oppose a motion for summary judgment.  Instead, Plaintiff's counsel states that some unnamed employees of Defendant were reluctant to sign affidavits and this Court

should allow Plaintiff to go to trial because these employees will testify in open court. (Pl.'s Resp. to Mot. Summ. J. at 20-21.)  However, unverified assertions by an attorney in a memorandum opposing summary judgment do not comply with Rule 56(f) and result in a waiver.  *Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992).  Moreover, even if certain witnesses were reluctant to sign an affidavit, there is no indication that Plaintiff attempted to subpoena these individuals.

Most significantly, Plaintiff does not request a continuance to complete discovery; rather she requests that she be allowed to proceed to trial where she contends the reluctant witnesses will testify.  However, Plaintiff does not explain why these witnesses would be willing to testify in open court when they were unwilling to sign an affidavit. Although a court should liberally construe a request pursuant to Rule 56(f), a request that is dilatory or lacking in merit will not suffice.  *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir. 1984).  Here, Plaintiff has been dilatory in pursuing discovery.  It appears that Plaintiff has not served any interrogatories or requests for admissions, or noticed or conducted any depositions.  Plaintiff cannot use Rule 56(f) to avoid a proper response to a motion for summary judgment and expect the court to allow her to proceed directly to trial.  *See Dreiling v. Peugeot Motors of America, Inc.*, 850 F.2d 1373, 1377 (10th Cir. 1988).

I find that Plaintiff has failed to establish a right to relief under Rule 56(f) and, therefore, I deny her request for relief pursuant to Rule 56(f).  In addition, I find that, other than generally denying the allegations that formed the basis for her termination, Plaintiff has not met her burden under Rule 56(e).  In the following section, I will more fully discuss the impact of Plaintiff's failure as it relates to the arguments raised by

Defendant on summary judgment.

      C.    Arguments on Summary Judgment

           1.    Race and Gender Claims

Defendant asserts that Plaintiff's race and gender discrimination claims must be dismissed because Plaintiff cannot demonstrate that she was terminated under circumstances giving rise to an inference of discrimination, or that Defendant's reason for her termination was mere pretext for discrimination.

Pursuant to Title VII, it is unlawful for an employer to discharge or otherwise discriminate against any individual based upon race, gender or national origin[2].  42 U.S.C. § 2000e-2(a)(1).  To state a valid claim under Title VII, a plaintiff must prove by a preponderance of the evidence that the employer engaged in intentional discrimination. *See St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 506 (1993).  "A plaintiff alleging discrimination on the basis of race or gender must prove intentional discrimination through either direct [or circumstantial] evidence of discrimination."  *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).

Here, Plaintiff has not come forward with any direct evidence of discrimination by Defendant.  Where a plaintiff's discrimination claim relies exclusively on circumstantial evidence, I apply the burden-shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  That scheme first allocates the burden of production to the employee to establish a prima facie case of discrimination.  *McDonnell Douglas*, 411

---

[2] Although Plaintiff alleges "race discrimination" based on her Hispanic heritage, I note that the U.S. Census Bureau considers Hispanic origin to be a matter of ethnicity, rather than race.  *See www.census.gov/prod/2001pubs/c2kbr01-1.pdf.*  However, Plaintiff's characterization of her claim in this manner in no way alters the analysis or outcome of the issues herein.

U.S. at 802.

To establish a prima facie case of discrimination in connection with an alleged discriminatory discharge, a plaintiff must show that:  (1) plaintiff belongs to a protected group; (2) plaintiff was qualified for his/her job;  (3) despite his/her qualifications, [s]he was discharged; and (4) the position from which plaintiff was discharged was not eliminated (or was filled or remained available following the plaintiff's discharge). *English v. Colorado Dept. of Corrections*, 248 F.3d 1002, 1008 (10th Cir. 2001).  I find that Plaintiff has carried her burden of proving a prima facie case.  As a Hispanic woman, Plaintiff is a member of a protected class.  Defendant concedes that Plaintiff can establish she was performing her job in a satisfactory manner and was qualified to do her job.  (Def.'s Mot. Summ. J. at 17.)  Additionally, it is undisputed that Defendant terminated Plaintiff on November 2, 2006, and Elbert Maxey filled her position, in February 2007.

Once a plaintiff establishes a prima facie case, then the burden of production shifts to the defendant to present evidence that it had a legitimate, nondiscriminatory reason for its action.  *McDonnell Douglas*, 411 U.S. at 802-03.  Here, Defendant asserts that Plaintiff was terminated because of its finding that she engaged in a pattern of misconduct, as set forth in Mr. Barnes Investigation Report.  Mr. Barnes found that (1) Plaintiff asked a subordinate, Mr. James Williams, to forge a document used to terminate another employee; (2) Plaintiff terminated a full-time employee in violation of Defendant's policies; (3) Plaintiff dated one of her subordinates; (4) Plaintiff called and talked with one of her subordinates about the Ramirez investigation while she was on administrative leave, in violation of Defendant's policy; (5) Plaintiff intimidated and

retaliated against subordinates; and (6) Plaintiff made sexual innuendos while at work. While Plaintiff denies the factual basis for many of these findings, she has failed to support her denials with citation or reference to competent evidence in the record.  In addition, at this stage, the relevant inquiry is the belief of the employer that the employee engaged in misconduct.  *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1178 (10th Cir. 2005).  A court need only examine the facts as they appeared to the employer and determine if the employer *reasonably believed* that the report was accurate, even if erroneous.  *Tesh v. U.S. Postal Serv.*, 349 F.3d 1270, 1273 (10th Cir. 2003).  The undisputed evidence in the record indicates that Defendant reasonably believed in the accuracy of Mr. Barnes Investigation Report.  Thus, I find that Defendant has provided a legitimate, non-discriminatory reason for its termination of Plaintiff's employment.

Because Defendant has met its burden of showing it had a legitimate, non-discriminatory reason for its actions, the burden of production now shifts back to Plaintiff.  Plaintiff must demonstrate that Defendant's proffered explanation is pretextual. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993).  Evidence of pretext, plus the establishment of a prima facie case, is sufficient to avoid summary judgment, and plaintiff is not required to present direct evidence of an illegal discriminatory motive. *Reynolds v. School Dist. No. 1*, 69 F.3d 1523 (10th Cir. 1995).  On the other hand, failure by Plaintiff to come forward with evidence of pretext, or evidence that discrimination was a determinative factor in her termination, will entitle Defendant to summary judgment.  *Reynolds*, 69 F.3d 1523 (10th Cir. 1995).

Although the McDonnell Douglas framework shifts the burden of production to the defendant after a prima facie case is shown, "the ultimate burden of persuading the

trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's*, 113 S.Ct. at 2747; *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1191-92.  To show pretext, the employee must show either ""that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence."" *Cone v. Longmont United Hosp. Assoc.*, 14 F.3d 526, 530 (10th Cir. 1989) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  In other words, "under ordinary summary judgment principles, the plaintiff must produce evidence from which a reasonable jury could believe that the defendant's proffered reason is a false one in order to survive summary judgment." *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1396 (10th Cir. 1997).

In this case, Plaintiff alleges that Defendant proffered reason for her termination is pretext because Mr. Barnes' investigation did not produce any overwhelming or eyewitness of Plaintiff's misconduct, Mr. Barnes' coerced witnesses to sign statements against Plaintiff, and that Defendant "used its investigation powers to cover up the greater underlying purpose of discrimination against an aging female Hispanic worker." (Pl.'s Resp. to Mot. Summ. J. at 17-18, 21.)[3]  However, Plaintiff has not come forward with any evidence to support these assertions, and these conclusory statements are simply insufficient to create a genuine issue of material fact.  As discussed above, while Plaintiff disputes Defendant's conclusion that she engaged in misconduct, she has not come forward with any credible or admissible evidence demonstrating that Defendant

---

[3]Plaintiff also vague asserts in her response that the District discriminated against her by failing to offer her early retirement in lieu of termination, by demoting another Hispanic, female employee, and by failing to utilize "progressive discipline" in her termination.  These assertions are either irrelevant and/or wholly unsupported by evidence in the record.

was motivated by discrimination or that Defendant's proffered explanation for her termination is unworthy of belief.  Moreover, evidence provided by Defendant demonstrates that Plaintiff admitted to much of the alleged misconduct in her statement given in connection with Mr. Barnes's investigation and in her deposition.  As discussed above, in a signed statement she provided during the investigation, Plaintiff admitted to having a relationship with a subordinate, and to discussing the investigation with a subordinate.  (Def.'s Mot. Summ. J. Ex. N Chadwick Statement at 2-3).  In addition, during her deposition, Plaintiff also admitted to making sexual innuendos at work, and she to instructing Mr. Williams to sign the name "Josephine Morgan" to a document used to terminate another employee.  (Chadwick Depo. pp. 89:1:8, 158:16-19.)

Plaintiff repeatedly states that she will provide "direct evidence" of Defendant's "discriminatory practices" at trial.  However, it is Plaintiff's burden to come forward with this evidence in response to Defendant's motion, and conclusory arguments by Plaintiff's counsel in her response are insufficient to defeat summary judgment.  *McVay v. Western Plaints Service Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987).  I agree with Defendant  that Plaintiff's statements and arguments are based on her subjective belief that her termination was because of her race and gender.  "A plaintiff's mere conjecture that her employer's explanation is pretext of intentional discrimination is an insufficient basis for denial of summary judgment."  *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1491 (10th Cir. 1995).  In fact, "termination of an employee in the protected class does not, standing alone, give rise to an inference of discrimination; employers are free to terminate at-will employees for any reason, as long as it is not unlawful."  *Simmons v. Sykes Enterprises, Inc.*, 2009 WL 4015962, *3 (D. Colo. Nov. 18, 2009) (citing *Neal v.*

*Roche,* 349 F.3d 1246, 1252 (10th Cir.2003)).  Plaintiff was an at-will employee, and her

termination alone is not enough to give rise to discrimination simply because Plaintiff

was a Hispanic woman.  Plaintiff admittedly cannot point to any individual who

discriminated against her based on her race or gender.  (Chadwick Dep. 30-31: 8-2; 53-

54: 18-8, Apr. 15, 2010.)  In fact, the only discriminatory act Plaintiff points to is the

termination itself.  (*Id.* 31: 3-7; 55:17-22.)

Plaintiff has not created a genuine issue of material fact that Defendant District's

legitimate non-discriminatory reason is unworthy of credence, or pretextual.  Because

Plaintiff has failed to produce any evidence of pretext, I grant Defendant's motion for

summary judgment on Plaintiff's race and gender claims.[4]

### 2.   Age Discrimination Claim

I now turn to Defendant's assertion that Plaintiff's age discrimination claim must

be dismissed.  "The [Age Discrimination in Employment Act] provides, in relevant part,

that '[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any

individual or otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, *because of* such

individual's age.'" *Gross v. FBL Finan. Servs., Inc.*, ___ U.S. ___, 129 S. Ct. 2343, 2350

(2009) (quoting 29 U.S.C. § 623(a)(1) (emphasis added)).

To establish a prima facie case for age discrimination, Plaintiff must prove that:

(1) she is within the protected class of individuals 40 or older; (2) she is performing

---

[4]I note that Plaintiff response includes a confusing reference to "disparate impact" discrimination.  Plaintiff did not include a disparate impact claim in her EEOC Charge of Discrimination or her Complaint.  Further, such a claim is not supported by any evidence in the record.  Therefore, I find this claim is not properly before me, and I need not address any arguments related to disparate impact.

satisfactory work; (3) she was terminated from employment; and (4) she was replaced

by a younger person, although not necessarily one less than 40 years of age. *Adamson*

*v. Multi Community Diversified Services, Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008).

Once a prima facie case is established, the burden shifts to Defendant to articulate a

legitimate, nondiscriminatory reason for its actions. *Id.* at 1145.  If the Defendant does

so, the burden returns to Plaintiff to show either that Defendant's asserted reason was

pretextual, or to show that age was nonetheless a determinative factor in Defendant's

employment decision. *Id.* at 1145.  Under the ADEA, a "plaintiff is not required to show

that age was the sole motivating factor in the employment decision. Thus a plaintiff

need not prove that the reasons offered by the defendant are false if he proves that age

was also a reason, and that age was the factor that made a difference." *EEOC v.*

*Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir.1985) (citations

omitted).

       I find that Plaintiff has not satisfied the fourth element of her prima facie case for

age discrimination.  It is undisputed that Plaintiff is within the protected class of

individuals 40 or older because she was 50 years old at the time of her termination.

(Chadwick Dep. 56-57: 15-10, Apr. 15, 2010.)  For purposes of its motion, Defendant

does not contest that Plaintiff was performing satisfactory work and that she was

terminated.  However, I agree with Defendant that Plaintiff has not raised a genuine

issue of material fact regarding the age of the employee who replaced her.

Plaintiff is an Hispanic woman, and she was fifty years old at the time of her termination.

Defendant contends that it replaced Plaintiff with a fifty-five year old, African-American

male.  (Deane Aff. ¶ 12; Maxey Aff. ¶ 3.)  Plaintiff contends, without support, that

Defendant actually replaced her with a younger man, Richard Archuleta, who was half-Hispanic and half-Caucasian.  (Pl.'s Resp. Mot. Summ. J. ¶¶ 72, 46.)  In its reply, Defendant submitted a second affidavit from Ms. Deane, who testified that two Area Supervisors were hired following Plaintiff's termination - Mr. Archuleta, a thirty-five year old Hispanic male who was hired to fill a position as NW Area Supervisor, and Mr. Maxey who was hired to fill Plaintiff's position as NE Area Supervisor.  (Deane Aff. BB ¶ 4.)

Plaintiff has not submitted any evidence that would contradict the information in Ms. Deane's affidavit.  Plaintiff provides no affidavits, deposition excerpts or other competent evidence to support her contention that her "position was filled by a 20 something year old male."  (Pl.'s Resp. to Mot. Summ. J. 20.)  Finally, even assuming Plaintiff could establish a *prima facie* case of age discrimination, for the reasons set forth above, she cannot demonstrate that Defendant's articulated, non-discriminatory reason for her termination is mere pretext, or that age was nonetheless a determinative factor in Defendant's employment decision.  *See Adamson*, 514 F.3d at 1145.

Therefore, I grant Defendant District's motion for summary judgment on Plaintiff's age discrimination claim because Plaintiff was unable to establish a prima facie case under the ADEA.

IV.    CONCLUSION

Therefore, for the reasons set forth herein, it is hereby

ORDERED that Defendant's Motion for Summary Judgment, filed July 20, 2010 [ECF No. 20] is **GRANTED**.  Judgment shall enter in favor of Defendant on all of Plaintiff's claims for relief.

-18-

Dated:  March 4, 2011

BY THE COURT:


s/ Wiley Y. Daniel_____
Wiley Y. Daniel
Chief United States District Judge